Filed 5/15/13  P. v. Hernandez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037436 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. WF00983) |
| v. | ORDER MODIFYING OPINION |
| RENE HERNANDEZ, | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

BY THE COURT:

It is ordered that the opinion filed herein on May 9, 2013, be modified in the following particulars:

On page 1, the heading "Santa Clara County" is deleted and replaced with "Santa Cruz County."

This modification does not affect a change in the judgment.

_____
BAMATTRE-MANOUKIAN, J.


_____
ELIA, ACTING P.J.


_____
MÁRQUEZ, J.

Filed 5/9/13 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037436 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. WF00983) |
| v. | |
| RENE HERNANDEZ, | |
| Defendant and Appellant. | |

Defendant Rene Hernandez appeals after conviction, by jury trial, of rape (Pen. Code, § 261, subd. (a)(2)),[1] penetration with a foreign object (§ 289, subd. (a)(1)), and assault by means of force likely to produce great bodily injury (former § 245, subd. (a)(1)). The jury found true allegations that defendant kidnapped the victim before committing the rape and penetration. (§ 667.61, subds. (b), (e)(1).) Defendant was sentenced to consecutive terms of 15 years to life for the rape and penetration, with the term for the assault stayed pursuant to section 654.

On appeal, defendant contends: (1) there was insufficient evidence to support the kidnapping allegations; (2) the trial court failed to instruct the jury that in determining whether defendant kidnapped the victim, it should consider whether the forcible

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

movement was incidental to the commission of the associated offenses; (3) the trial court erred by allowing the prosecution to admit 10 booking photos of defendant to show his changed appearance and consciousness of guilt; (4) the trial court failed to instruct the jury to view defendant's oral admissions with caution and failed to give a corpus delicti instruction; (5) the trial court coerced a verdict on the kidnapping allegations by directing the jury to continue deliberating on those allegations after the jury reported a deadlock on count 1; (6) the cumulative effect of the errors denied defendant due process and a fair trial; (7) section 654 barred the trial court from imposing One Strike law sentences for both the rape and penetration with a foreign object based on the same act of kidnapping; and (8) this court should order a suppression hearing or find that trial counsel was ineffective for failing to bring a suppression motion, because defendant's DNA was taken after arrest on an unrelated felony charge for which he was not convicted, in violation of the Fourth Amendment.

As we shall explain, with respect to the kidnapping allegations, we agree that the trial court should have instructed the jury to consider whether the forcible movement was incidental to the commission of the associated offenses, and that the error was prejudicial. We will reverse the judgment and remand for possible retrial of the kidnapping allegations under section 667.61, subdivisions (b) and (e)(1). We find no prejudicial error as to defendant's convictions of rape, penetration with a foreign object, or assault by means of force likely to produce great bodily injury. We also decline to order a suppression hearing and find that defendant did not receive ineffective assistance of counsel.

3

## BACKGROUND

### A.    Testimony Regarding the Incident

On February 11, 2009, Jane Doe[2] took care of an elderly couple who lived in Watsonville.  After work, she remained at the house and began drinking alcohol.  She had more than two drinks.  Sometime between 8:30 p.m. and 9:30 p.m., Doe decided to walk to her ex-boyfriend's home on Dogwood Drive.  As she walked, Doe felt safe, wondering, "Who would touch a 56-year-old woman?"

Doe's route took her down the sidewalk along East Lake Avenue.  About 10 to 15 minutes into her walk, Doe saw two men approaching her.  One of the men was young, tall, and thin, and he had a pit bull on a leash.  The second man – defendant – was older, shorter, and heavier, with "real short" hair.

Defendant told the other man to leave.  He then pulled Doe by the hair and arm, moving her about four or five feet off the sidewalk, away from the street.  Defendant pushed Doe's head into a cement wall, and she ended up on the ground next to some bushes.  Defendant told Doe to "shut up" and said he was going to "fuck [her] to death." Doe realized her pants were down around her ankles.  Defendant penetrated her vagina with his finger and then with his penis.  After saying "I'm done, bitch," he left.

Doe got up and pulled up her pants.  She had leaves and other debris all over her. Her purse was missing.  She ran down East Lake Avenue, trying to get help.  Several cars passed without stopping, until Juan Roman noticed her waving and offered his help.

Doe was upset, smelled of alcohol, and had dirty clothing, but was speaking clearly.  Doe said she needed a ride and that she had been raped.  Roman called 911 then took Doe to meet two deputies.

---

[2] Although the information alleged that the offenses were committed against "Jane Doe," the jury learned the victim's true name during trial.  We continue to refer to her as Jane Doe pursuant to our policy of nondisclosure of the names of living victims of sex crimes.  (See Cal. Style Manual (4th ed. 2000) § 5:9.)

### B.    Investigation

Watsonville Police Detective Morgan Chappell spoke to Doe about the incident. Doe was coherent and alert during the interview.  She complained of head pain and had "weeds and stuff" in her hair.  Doe said she had consumed two mixed drinks.  She said her purse had about $20 in it as well as two prescription bottles.

Detective Chappell then took Doe to the hospital, where she spoke to a Sexual Assault Response Team (SART) nurse.  Doe gave consistent versions of the incident to the detective and the nurse.  During the SART exam, the nurse found debris (bark, twigs, crushed leaves, and moss) in Doe's underwear and pants.  Debris was also stuck to Doe's back and inside the entrance to her vagina.  There was a bruise on Doe's right arm and abrasions on both of her knees.

The SART nurse found a laceration at the 6:00 o'clock position in Doe's vagina. This injury is commonly found when there has been blunt force trauma, and it is consistent with the use of "more force" than what would be used for consensual sex.  Doe also had a puncture wound in her anal opening.  Live sperm was found on a vaginal swab.

At the time of the SART exam, Doe did not seem intoxicated.  However, when her blood was drawn at 2:30 a.m., it had a blood alcohol level of 0.19 percent.  According to toxicologist Judy Stewart, the alcohol would have metabolized at a rate of 0.015 percent per hour.

Detective Chappell participated in a search for the crime scene, but neither he nor the other officers found anything of evidentiary value.  It had rained earlier that day and had begun raining again.  Doe had not been able to pinpoint the exact location of the rape; she had only been able to identify the particular side of the road and the general location on East Lake Avenue between two cross streets.

Photographs taken in the general location of the incident were introduced at trial. They show a street on one side of the sidewalk and an embankment that runs along the

other side of the sidewalk. A concrete wall sits at the top of the embankment. As shown by the photograph and as described by witnesses, various forms of vegetation (ice plant, bushes, and young trees) grow along the embankment and near the concrete wall.

Detective Chappell testified that on a dark and rainy night, a passer-by would not be able to see the shrubs or anything behind them very well. It would be "much easier" to see someone on the sidewalk than someone in the area between the shrubs and the wall.

Watsonville Police Detective Christopher Greene worked with Doe's description of her attacker to produce a composite drawing following the rape. The drawing was circulated in local newspapers. It generated a few leads that "went nowhere."

On March 11, 2009, Detective Greene canvassed the neighborhoods along East Lake Avenue. He went to defendant's residence because another officer had reported seeing a pit bull in that neighborhood. He inquired at the residence but did not speak to defendant. An adult female at the residence said the dog belonged to defendant. Detective Greene later showed Doe a photograph of the pit bull, but she was unable to identify it as the one she had seen on the night of the incident.

DNA from the sperm found during the SART exam was entered into the CODIS database in March 2009. On January 5, 2010, a "cold hit" occurred in the CODIS database, matching the DNA evidence to defendant, whose DNA had been taken following an arrest on an unrelated matter.

Following the CODIS hit, defendant was arrested for the current offenses on January 11, 2010. A photograph of defendant, taken in 2008, was included in a photographic array that was shown to Doe. Doe could not positively identify anyone from the array, although she spent "a long time" looking at defendant's photograph and commented that the photograph "look[ed] like him."

6

### C.    *Victim Impeachment – Prior Domestic Violence Incident*

On June 18, 2005, Santa Cruz County Sheriff Detective Joe Mata was dispatched to the Dogwood Drive residence to investigate a possible stabbing. Doe was at the residence and appeared to be intoxicated. She claimed that she had been stabbed in the neck, chest, and face. Medics attended to her but did not believe she had been stabbed, although she did have bruises on her arms and possibly on a knee. Doe was arrested for domestic violence, but Detective Mata did not believe she was ever prosecuted.

Doe acknowledged having problems with alcohol and that the police had responded to a 911 call at her ex-boyfriend's home. Doe denied telling the police that her ex-boyfriend had stabbed her, but she admitted that "things were exaggerated."

### D.    *Charges, Trial, and Sentencing*

On July 1, 2010, the District Attorney filed an information alleging that defendant committed kidnapping for purposes of rape (count 1; § 209, subd. (b)(1)), forcible rape (count 2; § 261, subd. (a)(2)), penetration with a foreign object (count 3; § 289, subd. (a)(1)), second degree robbery (count 4; § 211), assault with intent to commit a sex offense (count 5; § 220, subd. (a)), false imprisonment by violence (count 6; § 236), and assault by means of force likely to produce great bodily injury (count 7; former § 245, subd. (a)(1)).

The information alleged two One Strike law circumstances in connection with the charges of rape and penetration with a foreign object. First, it alleged that defendant kidnapped the victim "and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense" (i.e., aggravated kidnapping), which would make the crimes punishable by a term of 25 years to life. (§ 667.61, subds. (a), (d)(2).) Alternatively, the information alleged that defendant "kidnapped the victim of the present offense in violation of Section 207 and or 209 and or 209.5" (i.e., simple kidnapping), which would make the crimes punishable by a term of 15 years to life. (§ 667.61, subds. (b), (e)(1).)

At trial, defendant did not dispute that he had sexual intercourse with Doe, as that fact was established by the DNA evidence. He argued that Doe was not credible in testifying that the intercourse was non-consensual. He also argued there was insufficient evidence to support guilty verdicts on the other counts and true findings on the special allegations.

The jury convicted defendant of three counts: forcible rape (count 2; § 261, subd. (a)(2)), penetration with a foreign object (count 3; § 289, subd. (a)(1)), and assault by means of force likely to produce great bodily injury (count 7; former § 245, subd. (a)(1)). It found defendant not guilty of robbery (count 4; § 211) and not guilty of the lesser-included offense of petty theft (§ 484). The jury was unable to reach a verdict on the charge of kidnapping for purposes of rape (count 1; § 209, subd. (b)(1)).

Because of the guilty verdicts on counts 2 and 3, no verdict was returned for count 5 (assault with intent to commit a sex offense; § 220, subd. (a)), which was charged only as a lesser-included offense of counts 2 and 3. Likewise, because the jury was unable to reach a verdict on count 1, the trial court did not record the jury's verdict for count 6 (false imprisonment by violence; § 236), which was charged only as a lesser-included offense of count 1.

As to counts 2 and 3 (rape and penetration with a foreign object), the jury found the aggravated kidnapping allegations not true (§ 667.61, subds. (a), (d)(2)), but it found the simple kidnapping allegations true (§ 667.61, subds. (b), (e)(1)).

At the sentencing hearing on August 18, 2011, the trial court imposed consecutive terms of 15 years to life for the rape and penetration (counts 2 and 3). It imposed the four-year upper term for the assault (count 7), but stayed that count pursuant to section 654. It imposed a $10,000 restitution fine (§ 1202.4, subd. (b)), imposed but stayed a $10,000 parole revocation fine (§ 1202.45), imposed $120 in court security fees (§ 1465.8, subd. (a)(1)), and imposed $90 in criminal conviction assessments (Gov. Code,

§ 70373). On the District Attorney's motion, the trial court dismissed counts 1, 5, and 6 and the aggravated kidnapping allegations.

## DISCUSSION

### A. *Sufficiency of the Evidence of Kidnapping*

Defendant contends there was insufficient evidence to support the allegations that defendant committed the rape and penetration "after kidnap[p]ing the victim in violation of Penal Code section 207." (See § 667.61, subd. (e)(1).)

#### 1. **Standard of Review**

In reviewing a claim of insufficiency of the evidence on appeal, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319, original italics.) "An appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal.3d 421, 425.)

#### 2. **Analysis**

In urging this court to strike the kidnapping allegations, defendant contends that there was insufficient evidence of asportation – that is, movement of the victim that is " 'substantial in character.' " (*People v. Martinez* (1999) 20 Cal.4th 225, 235 (*Martinez*).)

In *Martinez,* the California Supreme Court set forth the asportation standard for simple kidnapping in violation of section 207, subdivision (a). Reaffirming that the movement must be "substantial in character" (*Martinez, supra,* 20 Cal.4th at p. 237), the court overruled precedent that had "made the asportation standard exclusively dependent on the distance involved" (*id.* at p. 233). The *Martinez* court emphasized that

9

"[s]ection 207(a) proscribes kidnapping or forcible movement, not forcible movement for a specified number of feet or yards." (*Id.* at p. 236.)

The *Martinez* court held that "factors other than actual distance are relevant to determining asportation . . . in all cases involving simple kidnapping." (*Martinez, supra,* 20 Cal.4th at p. 235.) Thus, "the jury should consider the totality of the circumstances." (*Id.* at p. 237.) Relevant circumstances might include actual distance as well as "such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Ibid.,* fn. omitted.) "In addition, in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality." (*Ibid.*)

Although the *Martinez* court was clear that actual distance was not determinative of whether a movement was "substantial in character," it also "emphasize[d] that contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." (*Martinez, supra,* 20 Cal.4th at p. 237.)

Defendant asserts that because *Martinez* stressed that a movement for "only a very short distance" cannot establish asportation (*Martinez, supra,* 20 Cal.4th at p. 237), "there remains some minimum actual distance requirement." He argues that the movement of Doe from the sidewalk to the area near the wall and shrubs – approximately four or five feet, according to Doe's estimate – was "only a very short distance" and thus insufficient to establish asportation despite any contextual factors. (*Ibid.*) Defendant also asserts that even with the contextual factors, the movement here was not substantial.

We do not read *Martinez* as establishing that a movement of only four or five feet is so "very short" that it could never be the basis for a simple kidnapping conviction. In

10

*Martinez,* the California Supreme Court made it clear that there is no specific actual distance minimum for simple kidnapping. (*Martinez, supra,* 20 Cal.4th at p. 236; see *People v. Corcoran* (2006) 143 Cal.App.4th 272, 280 ["measured distance is not alone determinative"].) Defendant contends that the specific distance of five feet is, as a matter of law, never "substantial in character." (*Martinez, supra,* 20 Cal.4th at p. 237.) In light of *Martinez's* overruling of the line of cases setting a minimum distance requirement for kidnapping, we decline to so hold.

Prior published cases have held that movements as short as nine feet are not so "very short" as to preclude a jury finding that the distance was insubstantial. (*Martinez, supra,* 20 Cal.4th at p. 237.) For instance, in *People v. Shadden* (2001) 93 Cal.App.4th 164 (*Shadden*), the defendant dragged the victim nine feet from the front counter of a video store to a room in the back of the store. The *Shadden* court upheld the defendant's simple kidnapping conviction, noting that "[w]here movement changes the victim's environment, it does not have to be great in distance to be substantial." (*Id.* at p. 169.) The *Shadden* court explained that because the victim was moved "from an open area to a closed room," which changed the victim's environment, "the jury could reasonably infer that the distance was substantial." (*Ibid.*)

Here, the movement of Doe from the sidewalk to the area near the wall and shrubs, while brief, was not so "very short" as to be insubstantial as a matter of law. (*Martinez, supra,* 20 Cal.4th at p. 237.) A reasonable jury could have found that taking Doe from the sidewalk to the area next to the concrete wall significantly altered her environment. (See *Shadden, supra,* 93 Cal.App.4th at p. 169.) The evidence at trial established that on the sidewalk, even though it was dark out, Doe would have been visible to cars passing by because the headlights would have illuminated the area. In contrast, four or five feet away, up the embankment and obscured by the shrubs, Doe would not have been nearly as visible to passers-by. This change in environment made it more likely that defendant would avoid detection, reduced Doe's opportunity to escape,

11

and gave defendant a greater opportunity to commit additional crimes. (See *ibid.* ["where a defendant moves a victim from a public area to a place out of public view, the risk of harm is increased even if the distance is short"].)

A reasonable juror could also have found that "the movement of the victim was for a distance beyond that which was incidental to the commission of an associated crime." (*People v. Bell* (2009) 179 Cal.App.4th 428, 440 (*Bell*); see *Martinez, supra,* 20 Cal.4th at p. 237.) The record supports a finding that the movement of Doe from the sidewalk to the area near the concrete wall and shrubs was not incidental to the commission of any of the associated crimes – i.e., rape, penetration, or assault. Defendant could have committed the assault or sexual assault on Doe while she was on the sidewalk or right next to the sidewalk, instead of moving her to the area with bushes and the wall. (See *Shadden, supra,* 93 Cal.App.4th at p. 169 [movement is not necessary to the commission of a rape]; *People v. Diaz* (2000) 78 Cal.App.4th 243, 248-249 (*Diaz*) [movement of victim from sidewalk to immediately adjacent grassy area was incidental to rape, but further movement to dark area was not].)

In sum, based on the totality of the circumstances, a jury could reasonably find that defendant's movement of Doe was "substantial in character." (*Martinez, supra,* 20 Cal.4th at p. 237.) Substantial evidence in the record supports the jury's findings under section 667.61, subdivisions (b) and (e)(1).

### B.     *Instructional Error*

Defendant contends the trial court erred by failing to instruct the jury that in order to find the kidnapping allegations true, it should consider whether the forcible movement of Doe was more than "merely incidental" to the commission of an associated offense. (CALCRIM No. 1215; see *Martinez, supra,* 20 Cal.4th at p. 237.)

### 1.     Proceedings Below

The trial court instructed the jury pursuant to CALCRIM No. 3179 that if it found defendant guilty of the rape and penetration with a foreign object, it had to "decide

12

whether, for each crime, the People have proved the additional allegation that the defendant kidnapped [Jane Doe]." The trial court explained that "[t]o decide whether the defendant kidnapped [Jane Doe]," the jury should "refer to the separate instructions that I will give you on kidnapping."

The trial court then instructed the jury pursuant to CALCRIM No. 1215 that to find defendant committed kidnapping, it had to find that "1. The defendant took, held, or detained another person by using force or by instilling reasonable fear; [¶] 2. Using that force or fear, the defendant moved the other person or made the other person move a substantial distance; [¶] AND [¶] 3. The other person did not consent to the movement."

The trial court gave the following definition of the term "substantial distance": "*Substantial distance* means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as whether the movement increased the risk of harm, increased the danger of a foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection." (CALCRIM No. 1215.)

The trial court did not include an optional (bracketed) portion of CALCRIM No. 1215, which would have instructed the jury that in determining whether the victim was moved a substantial distance, it could also consider "whether the distance the other person was moved was beyond that merely incidental to the commission of" an "associated crime."

### 2. Analysis

The California Supreme Court has made it clear that "in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the

13

movement's substantiality." (*Martinez, supra,* 20 Cal.4th at p. 237.) Citing *Martinez* and *Bell, supra,* 179 Cal.App.4th 428, the bench notes to CALCRIM No. 1215 state, "The court must give the bracketed language on movement incidental to an associated crime when it is supported by the evidence."

The Attorney General states that "this issue is close" and acknowledges that "the trial court should have given the jury the bracketed language regarding incidental movement in the simple kidnapping 'one strike' allegation." However, the Attorney General cites *People v. Dieguez* (2001) 89 Cal.App.4th 266 at page 276 and asserts that there is no " 'reasonable likelihood' that the jury misconstrued or misapplied the law." The Attorney General notes that the "more than merely incidental" language was included in the jury instruction on the aggravated kidnapping allegation (CALCRIM No. 3175), and that during closing arguments, defense counsel told the jury that, for the simple kidnapping allegation, it should consider whether the movement was "merely incidental to the commission of forcible rape."

We do not believe that the instruction on the *aggravated* kidnapping allegation adequately informed the jury that, in considering whether the victim was moved a "substantial distance" for purposes of the *simple* kidnapping allegation, the jury could consider "whether the distance a victim was moved was incidental to the commission of that crime." (*Martinez, supra,* 20 Cal.4th at p. 237.) The instruction on the aggravated kidnapping allegation (CALCRIM No. 3175) told the jury that "substantial distance" required that the movement was "more than merely incidental to the commission of forcible rape and/or forcible digital penetration."[3] However, the instruction on the simple

---

[3] As given, CALCRIM No. 3175 provided: "If you find the defendant guilty of the crimes charged in Counts two and/or three, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant kidnapped [Jane Doe], increasing the risk of harm to her. You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.

"To prove this allegation, the People must prove that: [¶] 1. The defendant took, held, or detained [Jane Doe] by the use of force or by instilling reasonable fear; [¶]

14

kidnapping allegation omitted this requirement. Nothing in the instructions indicated that this omission was inadvertent, such that the jury should apply the same definition to both allegations.

We also disagree that defense counsel's argument was sufficient to inform the jury that the "substantial distance" determination should include a consideration of "whether the distance . . . was beyond that merely incidental to the commission of" an "associated crime." (CALCRIM No. 1215.) We cannot presume the jury applied the legal standards stated in defense counsel's argument rather than those provided in the jury instructions, particularly since the trial court also instructed the jury to "follow the law" as explained by the court's instructions, and that the instructions must be followed if the "attorney's comments on the law conflict with" them. (CALCRIM No. 200.)

We also find it significant that the jury asked about the meaning of "merely incidental" and specified that the question was "[i]n regard to Count One," the aggravated kidnapping charge.[4] This indicates that the jury was struggling with the term "merely incidental" and suggests that it did not necessarily understand that the standard applied to the simple kidnapping allegations.

---

2. Using that force or fear, the defendant moved [Jane Doe] or made her move a substantial distance; [¶] 3. The movement of [Jane Doe] substantially increased the risk of harm to her beyond that necessarily present in the forcible rape and forcible digital penetration; [¶] AND [¶] 4. [Jane Doe] did not consent to the movement.

"*Substantial distance* means more than a slight or trivial distance. The movement must be more than merely incidental to the commission of forcible rape and/or forcible digital penetration. In deciding whether the distance was substantial and whether the movement substantially increased the risk of harm, you must consider all the circumstances relating to the movement.

"The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

[4] The jury inquiry stated, "In regard to Count One, we request clarification of what 'merely incidental' means? [¶] Are we allowed to be undecided on Count one and move to Count six?"

15

On this record, we cannot be confident that the jury understood that, with respect to the simple kidnapping allegations, the "substantial distance" determination should include a consideration of "whether the distance . . . was beyond that merely incidental to the commission of" an "associated crime." (CALCRIM No. 1215; see *Martinez, supra,* 20 Cal.4th at p. 237.)

Having concluded there was instructional error, we must determine if reversal is required. As defendant points out, at least one published case has held that this error is subject to harmless-error review under the "harmless beyond a reasonable doubt" standard of *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), because it violates the defendant's "right to a correct jury instruction on all the elements of the offense of simple kidnapping." (*Bell, supra,* 179 Cal.App.4th at p. 439.) The Attorney General does not advocate for a different harmless error standard, so we will assume that the *Chapman* standard applies.

"In determining whether instructional error was harmless, relevant inquiries are whether 'the factual question posed by the omitted instruction necessarily was resolved adversely to the defendant under other, properly given instructions.' [Citation.] A reviewing court considers 'the specific language challenged, the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury. . . .' [Citation.]" (*Bell, supra,* 179 Cal.App.4th at p. 439.)

As noted above, we cannot say with confidence that " 'the factual question posed by the omitted instruction necessarily was resolved adversely to the defendant under other, properly given instructions.' " (*Bell, supra,* 179 Cal.App.4th at p. 439.) Although the instruction on the aggravated kidnapping allegation (CALCRIM No. 3175) required the jury to find that the movement was "more than merely incidental to the commission of forcible rape and/or forcible digital penetration," the instructions did not inform the jury that the same definition of "substantial distance" applied with respect to the simple

16

kidnapping allegations. Moreover, the jury found the aggravated kidnapping allegation not true, suggesting that the jury found the distance was not "more than merely incidental to the commission of forcible rape and/or forcible digital penetration."

The jury's questions and verdicts do not necessarily reflect that it found the movement of Doe was more than merely incidental to the commission of an associated crime. The jury appeared to struggle with the concept of incidental movement when considering count 1, and it ultimately failed to reach a verdict as to that count. The jury's deadlock on count 1 suggests that some of the jurors might not have believed that the movement of Doe was more than merely incidental to the commission of the rape.

Finally, as the Attorney General acknowledges, it was a "very close" question whether the movement here was more than merely incidental to any of the associated offenses. As discussed above, the jury *could* have found that the movement of Doe was more than merely incidental to the assault or sex offenses, since defendant could have committed those offenses while Doe was on the sidewalk or right next to the sidewalk. (See *Shadden, supra,* 93 Cal.App.4th at p. 169; *Diaz, supra,* 78 Cal.App.4th at pp. 248-249.) However, the jury also *could* have reached the opposite conclusion – that the movement of Doe was merely incidental to the associated offenses, particularly the assault, which defendant committed by hitting Doe's head against the wall, which was four or five feet from the sidewalk. (See *Cotton v. Superior Court* (1961) 56 Cal.2d 459, 464 [dragging of victim 15 feet was incidental to assault]; *People v. Hoard* (2002) 103 Cal.App.4th 599, 607 [movement was merely incidental where it "served only to facilitate the crime with no other apparent purpose"].)

On this record, we conclude that a properly instructed jury might have reached a different result and thus that the error was not harmless beyond a reasonable doubt. (See *Chapman, supra,* 386 U.S. at p. 24.) If the jury had been instructed that in determining whether the "distance was substantial" (CALCRIM No. 1215), it could consider whether the movement was incidental to the associated offenses, it might not have found the

17

kidnapping allegations true. Because the trial court's omission of the "merely incidental" language in CALCRIM No. 1215 was not harmless, we shall reverse the simple kidnapping allegations and remand for a retrial and/or resentencing.[5]

### C. Booking Photographs

Defendant contends the trial court prejudicially erred by allowing the prosecution to introduce 10 booking photographs of him: six taken during the four years prior to the Doe incident and four taken afterwards. The photographs were introduced to support the prosecution's theory that defendant purposely changed his appearance following the rape, showing a consciousness of guilt.

The photographs taken prior to the Doe incident show that defendant kept his hair very short – his head was almost shaved bald. The photographs taken after the Doe incident show that defendant's hair became progressively and significantly longer. His facial hair changed as well. In the two years prior to the Doe incident, he kept a short goatee, but after the Doe incident it looked quite different – at one point, he had only a moustache, and later, he grew the goatee out.

### 1. Proceedings Below

Defendant moved in limine to exclude the booking photographs pursuant to Evidence Code section 352. The prosecution opposed the motion, arguing that the photographs demonstrated that defendant had deliberately changed his physical appearance following the rape.

At the hearing on the motion, defendant emphasized that his concern was with the jury's discovery that he had a criminal history. He argued that the jury might conclude

---

[5] In light of our reversal of the simple kidnapping allegations, we need not reach defendant's claim that the trial court erred by directing the jury to continue deliberating on those allegations after the jury reported a deadlock on count 1. Nor do we need to reach defendant's claim that section 654 barred the trial court from increasing the sentences imposed for his convictions of rape and penetration with a foreign object based on the same act of kidnapping.

18

his convictions were for more serious crimes than his actual criminal history reflected. He stressed that it would be prejudicial for the jury to learn that he had been arrested ten times. He suggested the prosecutor obtain photographs from the Department of Motor Vehicles or just use one photograph from before the rape and one from afterwards.

The prosecutor advocated for admission of all the photographs. He noted that defendant had been arrested six times between 2004 and 2008 with no change in his appearance, but that his appearance progressively changed in the four photographs after the rape. The prosecutor noted that after the rape, police had circulated a composite drawing and had even gone to defendant's home, where defendant's mother claimed that "nobody here looks like that."

The trial court inquired whether there were any steps that could be taken to reduce the prejudice. The prosecutor indicated the photographs would be introduced with the booking information "excised" but acknowledged that the jury would still be aware "that those are booking photos." The prosecutor suggested that the jury could be admonished.

The trial court found that the photographs were relevant, since they showed defendant's appearance was consistent from 2004 to 2008, but changed in a "pretty significant" manner after the rape. The trial court also found that the photographs had potential for prejudice, but tentatively ruled that they were admissible. The trial court indicated that if defendant produced alternative photographs, they might be used instead of the booking photographs.

Defendant requested the jury be informed of the specific charges and outcomes of each arrest. The prosecutor suggested that instead, the parties stipulate that none of the arrests involved sex crimes and that all were for misdemeanors. Defendant agreed.

During opening statements, the prosecutor noted that defendant's appearance "was amazingly stable for more than four years from 2004 to 2008," but changed after a composite drawing circulated after the rape.

19

The prosecution introduced the photographs during Detective Greene's testimony. The jury learned the exact dates of each photograph. The jury was read a stipulation stating that defendant "has no prior sex crimes and no felony convictions. Exhibits 4 and 5 are photographs taken from 2004 to 2010 during police contacts involving allegations of misdemeanor crimes of a non-sexual nature."

During trial, one of the alternate jurors sent a note to the trial court, asking if the booking photographs were from "seperate [sic] contacts with law enforcement?" In response, the trial court re-read the stipulation.

### 2. Analysis

Defendant does not dispute that the booking photographs showed a change in his appearance following the incident, nor does he dispute that a change in appearance can show consciousness of guilt. (See *People v. Randle* (1992) 8 Cal.App.4th 1023, 1036.) Defendant contends that it was unnecessary for the prosecution to introduce so many photographs because the jury thereby learned that he had been arrested on 10 separate occasions.

Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." In an Evidence Code section 352 analysis, " 'prejudicial' is not synonymous with 'damaging,' but refers instead to evidence that ' "uniquely tends to evoke an emotional bias against defendant" ' without regard to its relevance on material issues. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.)

"[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence. [Citations.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) Thus, error in admitting evidence pursuant to Evidence Code section 352 may be found only " 'on a showing that the court exercised its

20

discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Generally, "evidence of mere arrests is inadmissible because it is more prejudicial than probative," due to the danger that the jury will find that the defendant "has an untrustworthy and criminal character." (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1523.) Thus, booking photographs showing that a defendant has been arrested on previous occasions should not be admitted unless the photographs have strong probative value that is not "substantially outweighed" by their prejudicial effect. (Evid. Code, § 352.)

In one case, the trial court erred by admitting multiple booking photographs of the defendant because they did not all have probative value on the issue for which they were introduced. In *People v. Vindiola* (1979) 96 Cal.App.3d 370 (*Vindiola*), overruled on other grounds in *People v. Carter* (2003) 30 Cal.4th 1166 at page 1197, the booking photographs were introduced on the issue of identification. A prosecution witness testified that the perpetrator wore a heavy moustache, while a defense witness testified that she had never seen the defendant with a moustache. The prosecutor presented several booking photographs showing the defendant with a moustache. Since the most recent booking photograph showed him with a moustache, there was no reason for the prosecution to introduce the other photographs, which carried "the inevitable implication that appellant suffered previous arrests and perhaps convictions." (*Vindiola, supra,* at p. 384.)

In contrast to *Vindiola*, the trial court here did not abuse its discretion by finding that all 10 of the photographs had probative value concerning defendant's consciousness of guilt, and that their prejudicial effect did not substantially outweigh that probative value. Since defendant's identity was established by the DNA evidence, the probative value of the photographs was their reflection of defendant's consistent appearance during

the four years prior to the Doe incident and his progressive change in appearance following that incident. Introducing fewer photographs may not have had the same probative value. As the trial court found, the prejudicial effect of the photographs was minimized because the booking information was removed and because of the stipulation, which told the jury that defendant "has no prior sex crimes and no felony convictions" and that defendant's prior police contacts were all for "allegations of misdemeanor crimes of a non-sexual nature." The trial court reasonably determined that the stipulation would preclude the jury from speculating that defendant's criminal history included any serious offenses and thus minimize any prejudicial impact of the photographs. (See *People v. Little* (2012) 206 Cal.App.4th 1364, 1378 [trial court appropriately dealt with potential prejudice of prior conviction evidence by giving parties "an opportunity to work out a stipulation amongst themselves"].)

Even assuming that the trial court should have admitted fewer booking photographs, we would find the error harmless, whether we apply the test of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) or – because defendant claims the error implicates federal due process concerns – the more stringent standard of *Chapman, supra,* 386 U.S. 18.

First, there was little likelihood that the jury would use the booking photographs to find that defendant had a disposition to commit similar offenses to those charged. During closing argument, defendant conceded that he had sexual intercourse with Doe as established by the DNA evidence, so the only disputed issues at trial were whether Doe consented to the sexual acts, whether defendant assaulted and robbed her, and whether the movement met the legal standards for kidnapping. The stipulation ensured that the jury would not speculate that defendant had been arrested for other sex crimes or felony offenses like those charged and would not conclude that he was probably guilty of the current offenses based on his criminal history. (See *People v. Beagle* (1972) 6 Cal.3d 441, 453 (*Beagle*) [" 'when the prior conviction is for the same or substantially similar

22

conduct for which the accused is on trial,' " there is an " 'inevitable pressure on lay jurors to believe "if he did it before he probably did so this time" ' "].)

Second, the verdicts rendered by the jury show that it did not use the booking photographs in an improper manner – i.e., to find that defendant had a disposition to commit criminal activity. The jury acquitted defendant on the robbery charge (as well as the lesser-included offense of theft) and deadlocked on the aggravated kidnapping charge and allegations, showing that it conscientiously considered the evidence as to each charged offense. (See *People v. Williams* (2009) 170 Cal.App.4th 587, 613 (*Williams*) [jury's acquittal of one charge, finding of lesser-included offense on another charge, and not-true finding on one gang allegation showed that improper admission of gang evidence and prior crimes evidence was harmless].)

Third, the evidence of rape, forcible penetration, and assault was overwhelming. (See *Williams, supra,* 170 Cal.app.4th at p. 613 [erroneous admission of evidence shown where the "admissible evidence overwhelmingly established defendant's guilt"].) There was no evidence suggesting a reason why Doe would consent to having sex with defendant, a stranger, at night on the side of the road. Doe's injuries were consistent with the forcible movement, forcible intercourse, and assault she described. The witness observations of Doe's demeanor were consistent with someone who had recently been assaulted.

In light of the stipulation, the jury's verdicts, and all of the evidence, it is not reasonably probable that a result more favorable to the defendant would have been reached with fewer booking photographs (see *Watson, supra,* 46 Cal.2d at p. 836) and any error in admitting all 10 booking photographs was harmless beyond a reasonable doubt (see *Chapman, supra,* 386 U.S. at p. 24).

23

### D. Failure to Instruct On Defendant's Oral Admissions

Defendant asserts that the trial court erred by failing to instruct the jury to consider his extrajudicial oral statements with caution (CALCRIM No. 358) and that he could not be convicted of a crime based solely on his oral admissions (CALCRIM No. 359).

#### 1. Instructions at Issue

CALCRIM No. 358 provides: "You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

CALCRIM No. 359 provides: "The defendant may not be convicted of any crime based on (his/her) out-of-court statement[s] alone. You may only rely on the defendant's out-of-court statements to convict (him/her) if you conclude that other evidence shows that the charged crime [or a lesser included offense] was committed. [¶] That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. [¶] The identity of the person who committed the crime [and the degree of the crime] may be proved by the defendant's statement[s] alone. [¶] You may not convict the defendant unless the People have proved (his/her) guilt beyond a reasonable doubt."

#### 2. Analysis

Defendant contends that the oral admissions and corpus delicti instructions were warranted here because there was evidence that he told Doe he was going to "fuck [her] to death" before the rape and said "I'm done, bitch" after the rape.

24

The Attorney General acknowledges that defendant's statements meet the definition of oral admissions, such that the trial court was required to instruct the jury pursuant to CALCRIM No. 358, but disputes that the error was prejudicial. Perhaps because defendant's argument focuses primarily on CALCRIM No. 358, the Attorney General does not address the issue of the trial court's failure to instruct the jury pursuant to CALCRIM No. 359. We will assume the same argument applies and proceed to consider whether the trial court's failure to give both instructions amounted to reversible error.

Defendant claims reversal is required under the *Watson* standard for state law error, claiming it is reasonably probable that the trial court's failure to give the instructions affected the jury's verdict. Although defendant does not advocate for application of the *Chapman* standard, he does claim that the error denied him due process of law under the federal constitution.

As our Supreme Court has explained, in analyzing the effect of a trial court's failure to instruct pursuant to CALCRIM Nos. 358 and 359, we apply "the normal standard of review for state law error: whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. [Citations.] . . . Mere instructional error under state law regarding how the jury should consider evidence does not violate the United States Constitution. [Citation.] Failure to give the cautionary instruction is not one of the ' "very narrow[ ]" ' categories of error that make the trial fundamentally unfair. [Citation.]" (*People v. Carpenter* (1997) 15 Cal.4th 312, 393; see also *Beagle, supra,* 6 Cal.3d at p. 456.)

Defendant does not explain how failure to give the instructions was prejudicial in this case. Instead, he simply cites other cases that found prejudice where the court failed to give the oral statement instruction. In each of the cited cases, the defendant's oral statements were a crucial part of the prosecution's case. (See *People v. Ford* (1964) 60 Cal.2d 772, 800 [defendant's statements were " 'vitally important evidence' "]; *People v.*

25

*Bemis* (1949) 33 Cal.2d 395, 401 [defendant's statements were "the only evidence that connected defendant with the crime"]; *People v. Lopez* (1975) 47 Cal.App.3d 8, 14 [defendant's statements had "vital bearing . . . upon the only substantial issue the jury was required to resolve"]; *People v. Henry* (1972) 22 Cal.App.3d 951, 959 [case turned on whether defendant had admitted possession of jacket containing marijuana]; *Stork v. State* (Alaska 1977) 559 P.2d 99, 103 [evidence of defendant's statements "was a substantial factor leading to his conviction"].)

The cited cases are distinguishable from the instant case, where defendant's statements were not critical to the prosecution's case. Defendant's statements merely corroborated the other evidence of the rape, which included Doe's testimony, the DNA evidence, the physical evidence of her injuries, testimony about Doe's appearance and demeanor, and the evidence of defendant's change in appearance following the incident. (See *People v. Padilla* (1995) 11 Cal.4th 891, 923 [failure to give cautionary instruction regarding defendant's statements was harmless in light of the "comparatively marginal role defendant's statement must have played in the totality of the record"], overruled on other grounds by *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 (*Hill*).) Further, there was no conflict in the evidence about what defendant said, and the prosecutor mentioned defendant's statements only briefly during closing argument – primarily when discussing the robbery, of which defendant was acquitted.[6] On this record, applying any standard for harmless error, the trial court's failure to instruct the jury to consider defendant's statements with caution and to give a corpus delicti instruction was not prejudicial.

---

[6] During closing argument, the prosecutor noted that Doe knew defendant had ejaculated, either because she "felt something" or because he said " 'Done, bitch.' " When discussing the robbery count, the prosecutor mentioned the " 'Done, bitch' " statement again, saying it would be unreasonable to believe that someone else came and took the purse. The prosecutor argued that the " 'I'm going to fuck you until you die' " statement showed defendant used fear to take Doe's purse.

26

### E.    Cumulative Error

Defendant presents a very brief argument that the cumulative effect of the errors deprived him of a fair trial.  He does not specify which errors his argument pertains to, or how the errors, "though independently harmless," rose "by accretion to the level of reversible and prejudicial error." (*Hill, supra,* 17 Cal.4th at p. 844.)  " '[A]n appellate court [is not] required to consider alleged error where the appellant merely complains of it without pertinent argument. [Citation.]' " (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1615.)

In any event, we have determined that reversal of the kidnapping allegations is required, so the cumulative effect of any errors could only pertain to the rape, penetration, and assault counts.  With respect to those counts, defendant has challenged the trial court's admission of the booking photographs and the trial court's failure to instruct the jury pursuant to CALCRIM Nos. 358 and 359.  As discussed above, the trial court did not abuse its discretion by admitting the booking photographs, and any error was harmless.  Likewise, the failure to give CALCRIM Nos. 358 and 359 was harmless.

"A defendant is entitled to a fair trial, not a perfect one." (*People v. Mincey* (1992) 2 Cal.4th 408, 454.)  When a defendant invokes the cumulative error doctrine, "the litmus test is whether defendant received due process and a fair trial." (*People v. Kronemyer* (1987) 189 Cal.App.3d 314, 349 (*Kronemyer*).)  Accordingly, any claim based on cumulative error must be assessed "to see if it is reasonably probable the jury would have reached a result more favorable to defendant in their absence." (*Ibid.*)

Here, where the few errors concerning the substantive offenses were harmless, defendant cannot establish that it is reasonably probable he would have a received a more favorable result in the absence of the errors.  In other words, we are convinced that defendant "received due process and a fair trial." (*Kronemyer, supra,* 189 Cal.App.3d at p. 349.)

27

*F.* *DNA Collection*

Beginning January 1, 2009, the DNA and Forensic Identification Database and Data Bank Act of 1998 (Act) required "any adult person arrested or charged with any felony offense" to provide a blood sample and buccal swab sample. (§§ 295, subd. (a), 296, subd. (a)(2)(C).) The constitutionality of this part of the Act is now being considered by the California Supreme Court in *People v. Buza* (2011) 197 Cal.App.4th 1424, review granted October 19, 2011, S196200 (*Buza*). Briefing in *Buza* has been deferred pending the United States Supreme Court's decision in *Maryland v. King* (2012) 422 Md. 353, cert. granted Nov. 9, 2012, No. 12–207, __ U.S. __ [133 S.Ct. 594, 184 L.Ed. 2d 390], in which the high Court is considering a Fourth Amendment challenge to a Maryland statute that is similar to the Act.

Defendant notes that his DNA was taken following a felony arrest for which no charge was ever filed,[7] and that he was connected to the Doe incident only because of that DNA sample. He contends that if the Act is unconstitutional, his Fourth Amendment rights were violated and that all evidence obtained as a result should have been suppressed. He acknowledges that he did not raise this claim below but contends this court may review the issue for various reasons: (1) because it involves a pure question of law (see, e.g., *People v. Yeoman* (2003) 31 Cal.4th 93, 118), (2) by reviewing the claim as one involving ineffective assistance of counsel, or (3) by exercising our inherent discretion (see *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6).

The Attorney General argues that we should not consider the merits, pointing out that an appellate court "is in fact barred" from considering an issue not raised below "when the issue involves the admission (Evid. Code, § 353) or exclusion (*id.*, § 354) of evidence." (*People v. Williams, supra,* 17 Cal.4th at p. 161.) The Attorney General

---

[7] This assertion was made by trial counsel, and not challenged by the prosecutor, during discussion of the booking photos. Trial counsel indicated that defendant had been arrested for felony assault but "that was either dismissed or no file." The probation report reflects that defendant's criminal record consists only of misdemeanor convictions.

28

addresses the ineffective assistance argument, asserting that reasonable trial counsel could have determined there was no basis for bringing a challenge to the Act based on the state of the law at the time.

In light of defendant's failure to raise this issue below, we believe the appropriate way to examine this claim is through defendant's ineffective assistance of counsel argument.

### 1.     Standard of Review

"To prevail on a claim of ineffective assistance of counsel, a defendant ' "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." ' [Citation.]  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  [Citation.]  Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.]  To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.  [Citation.]  Moreover, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*).)

### 2.     Section 296

In the present case, defendant argues that trial counsel was ineffective in failing to move to suppress the evidence obtained as a result of his DNA sample pursuant to section 296.  We therefore provide a brief overview of that section.

As noted above, section 296 is part of DNA and Forensic Identification Data Base and Data Bank Act of 1998.  (§ 295 et seq.; see *People v. Robinson* (2010) 47 Cal.4th

1104, 1113 (*Robinson*).) "The Act became effective January 1, 1999. (Stats. 1998, ch. 696, § 4.) It created a databank to assist 'criminal justice and law enforcement agencies within and outside California in the expeditious detection and prosecution of individuals responsible for sex offenses and other violent crimes, the exclusion of suspects who are being investigated for those crimes, and the identification of missing and unidentified persons, particularly abducted children.' " (*Robinson*, *supra*, at pp. 1116-1117, fn. omitted.)

The Act has been amended several times. (*Robinson*, *supra*, 47 Cal.4th at p. 1117, fn. 13.) Most recently, "[t]he voters of this state approved Proposition 69 on November 2, 2004. Proposition 69 made significant amendments to the Act and was an urgent law that became immediately effective on November 3, 2004." (*Good v. Superior Court* (2008) 158 Cal.App.4th 1494, 1503 (*Good*).) Relevant here, "Proposition 69 amended section 296, subdivision (a) to substantially broaden the scope of DNA sample collection. The new subdivision (a)(1) requires DNA samples from any adult or juvenile convicted of *any* felony offense, not just the listed offenses in the prior law. [Citation.] The new subdivision (a)(2) requires samples from any adult *arrested for or charged with* felony sex offenses requiring registration; murder or voluntary manslaughter or the attempt thereof; and, beginning in 2009, any felony offense." (*Good*, *supra*, at p. 1503, fn. omitted.)

Sections 296 and 296.1 govern the collection of DNA samples from adult felony arrestees. The current version of section 296, subdivision (a)(2)(C) provides in part: "The following persons shall provide buccal swab samples, . . . and any blood specimens or other biological samples required pursuant to this chapter for law enforcement identification analysis: [¶] . . . [¶] Commencing on January 1 of the fifth year following enactment of the act that added this subparagraph, as amended, any adult person arrested or charged with any felony offense."

Section 296.1, subdivision (a)(1)(A) currently provides: "Each adult person arrested for a felony offense as specified in subparagraphs (A), (B), and (C) of paragraph (2) of subdivision (a) of Section 296 shall provide the buccal swab samples and thumb and palm print impressions and any blood or other specimens required pursuant to this chapter immediately following arrest, or during the booking or intake or prison reception center process or as soon as administratively practicable after arrest, but, in any case, prior to release on bail or pending trial or any physical release from confinement or custody."

### 3. Case Law Concerning DNA Collection and Section 296

The California Supreme Court has ruled that the nonconsensual collection of DNA samples from a *convicted* felon is reasonable under the Fourth Amendment "as ' " 'judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests.' " ' [Citation.]" (*Robinson*, *supra*, 47 Cal.4th at p. 1123; see also *In re Calvin S.* (2007) 150 Cal.App.4th 443, 445 [Fourth Amendment does not preclude collection of DNA sample from juvenile adjudicated under Welf. & Inst. Code, § 602]; *Coffey v. Superior Court* (2005) 129 Cal.App.4th 809, 823 [for purposes of the Act, defendant was convicted of a felony when he pleaded guilty to a wobbler offense as a felony].)

As noted above, at present, the issue of whether the Fourth Amendment precludes the nonconsensual collection of DNA samples from a felony *arrestee* under section 296, subdivision (a)(2)(C) is pending before the California Supreme Court in *Buza, supra,* 197 Cal.App.4th 1424, review granted October 19, 2011, S196200. The First District Court of Appeal considered the issue and determined that the Act, "to the extent it requires felony arrestees to submit a DNA sample for law enforcement analysis and inclusion in the state and federal DNA databases, without independent suspicion, a warrant or even a judicial or grand jury determination of probable cause, unreasonably intrudes on such

arrestees' expectation of privacy and is invalid under the Fourth Amendment . . . ." (*Buza*, *supra*, at p. 1461.)

The *Buza* decision was published on August 4, 2011, after trial but before sentencing in the present case. The California Supreme Court granted review on October 19, 2011, which had the effect of depublishing the decision. (See *People v. McKee* (2010) 47 Cal.4th 1172, 1218; Cal. Rules of Court, rule 8.1105(e)(1).)

Prior to *Buza*, only one published case had addressed the constitutionality of section 296, subdivision (a)(2)(C) – *Haskell v. Brown* (N.D. Cal. 2009) 677 F.Supp.2d 1187 (*Haskell*), which found that "California's DNA searching of arrestees appears reasonable." (*Id.* at p. 1201.)[8] In *Haskell,* the plaintiffs sought to enjoin further DNA sampling from felony arrestees under section 296. The district court denied the injunction, finding the plaintiffs were unlikely to prevail on the merits. (*Ibid.*) In analyzing the issue, the district court weighed the privacy interests of an individual arrestee against the government's interests in identification, solution of past crimes, and prevention of future crimes. (*Id.* at pp. 1196-1201.) Ultimately, the district court concluded that the privacy interests of the individual arrestees did not outweigh "the government's compelling interest in identifying arrestees, and its interest in using arrestees' DNA to solve past crimes." (*Id.* at p. 1201.)

### 4.    Analysis

In addressing defendant's claim of ineffective assistance of counsel, we first note that we frequently decline to make such determinations on direct appeal. As our Supreme Court has explained, "An appellate court should not declare that a police officer acted unlawfully, suppress relevant evidence, set aside a jury verdict, and brand a defense attorney incompetent unless it can be truly confident all the relevant facts have been

---

[8] A three-judge panel of the Ninth Circuit affirmed the district court's *Haskell* decision in *Haskell v. Harris* (9th Cir. 2012) 669 F.3d 1049, but the Ninth Circuit subsequently granted rehearing en banc. (*Haskell v. Harris* (9th Cir. 2012) 686 F.3d 1121.)

developed and the police and prosecution had a full opportunity to defend the admissibility of the evidence." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 (*Mendoza Tello*).) Thus, in *Mendoza Tello,* our Supreme Court declined to reach the merits of the defendant's claim that defense counsel was ineffective in failing to bring a motion to suppress evidence under section 1538.5, finding that because " 'the legality of the search was never challenged or litigated, facts necessary to a determination of that issue are lacking.' " (*Id.* at p. 266.)

The Attorney General does not assert that there are any undeveloped facts such that we should decline to reach the merits of defendant's claim. Thus, we first consider whether the record establishes " ' "deficient performance, i.e., representation below an objective standard of reasonableness." ' " (*Maury, supra,* 30 Cal.4th at p. 389.)

Defendant argues that reasonable trial counsel would have brought a Fourth Amendment challenge to the use of his post-arrest DNA collection, asserting that "extant U.S. Supreme Court authorities" would have supported such an argument. The Attorney General argues that while "the best lawyer" might have challenged the DNA collection, a "reasonable lawyer" was not required to do so.

With regard to legal research, the general rule is that "constitutionally adequate assistance requires that the attorney diligently and actively participate in the complete preparation of the client's case, and investigate all defenses of law and fact. [Citations.]" (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1129; *People v. Rosales* (1984) 153 Cal.App.3d 353, 361 ["failure to research the law satisfies the first prong of the incompetence test"].)

At the time of trial in this case, there was no published case holding that DNA collection from a felony arrestee under section 296 violated the Fourth Amendment. There was a 2009 federal district court opinion finding that "California's DNA searching of arrestees appears reasonable" (*Haskell, supra,* 677 F.Supp.2d at p. 1201), but *Haskell* was not binding authority on the trial court. (*People v. Bradley* (1969) 1 Cal.3d 80, 86

33

(*Bradley*).) Moreover, there was a Ninth Circuit case that, while not exactly on point, would have arguably supported a Fourth Amendment challenge to defendant's DNA collection. (*Friedman v. Boucher* (2009) 580 F.3d 847 (*Friedman*) [forcible DNA extraction of pretrial detainee in Nevada violated the Fourth Amendment]; see *Haskell, supra,* 677 F.Supp.2d at p. 1201 [criticizing *Friedman's* analysis].)

As it is a close question whether reasonable trial counsel would have brought a motion to suppress at the time of trial, we resolve this issue based on the second prong of the ineffective assistance test. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland v. Washington* (1984) 466 U.S. 668, 697 (*Strickland*); *In re Cox* (2003) 30 Cal.4th 974, 1020.)

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, 466 U.S. at p. 694.)

Under the state of the law at the time defendant could have brought a motion to suppress, it is not reasonably probable that the trial court would have granted the motion. *Buza* had not yet been published. The trial court was not bound by *Haskell,* despite the fact that it considered an issue involving the federal constitution, but the district court's opinion was nevertheless "persuasive and entitled to great weight. [Citations.]" (*Bradley, supra,* 1 Cal.3d at p. 86.) The *Friedman* case from the Ninth Circuit was not directly on point because it did not involve DNA extraction under statutory authority, and it had been criticized in *Haskell*. (See *Friedman, supra,* 580 F.3d at p. 853-856; *Haskell, supra,* 677 F.Supp.2d at p. 1201.) Had defendant moved to suppress, the prosecution

34

undoubtedly would have cited *Haskell*, which had essentially upheld section 296. Without any other case law as closely on point, it is not reasonably probable that the trial court would have disregarded *Haskell* and granted the motion to suppress. (See *People v. Camilleri* (1990) 220 Cal.App.3d 1199, 1211 [given "the lack of merit" of new theory for suppressing evidence under relevant case law, it was "not reasonably probable that the outcome would have been altered" had defense counsel asserted it].)

Having determined that defendant suffered no prejudice as a result of trial counsel's failure to bring a motion to suppress, we conclude that defendant's claim of ineffective assistance of counsel lacks merit. We emphasize that our ruling today is limited to defendant's claim of ineffective assistance of counsel and we express no opinion on the constitutionality of section 296, subdivision (a)(2)(C).[9]

## DISPOSITION

The judgment is reversed, and the matter is remanded for possible retrial of the kidnapping allegations (§ 667.61, subds. (b), (e)(1).)

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

[9] We also note that our decision does not preclude defendant from seeking relief in the event that the United States Supreme Court and/or California Supreme Court decisions in *King* and *Buza* are favorable to him. "[A] petitioner may raise an issue in habeas corpus proceedings if an intervening change in the law has occurred, even if the issue was raised on direct appeal. [Citation.]" (*In re Lucero* (2011) 200 Cal.App.4th 38, 46.)

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.